IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| EX REL. DANNY LYNN SMART, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. C-05-287 |
| § | | |
| CHRISTUS HEALTH, AKA CHRISTUS § | | |
| HEALTH SYSTEM, and CHRISTUS § | | |
| SPOHN HEALTH SYSTEM § | | |
| CORPORATION, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM AND ORDER

Pending before the Court are defendants CHRISTUS Health System ("CHRISTUS Health") and CHRISTUS Spohn Health System ("Spohn") (collectively, "Defendants") Motions to Dismiss relator Danny Lynn Smart's ("Relator") qui tam action. Dkt. Nos. 28, 29. Having considered the motions, record, and relevant law, the Court finds that Defendants' motions should be GRANTED.

### I. Background

Relator filed his initial complaint under seal, as required by the qui tam provision of the False Claims Act, *see* 31 U.S.C. § 3730(b)(2), on June 7, 2005. On October 9, 2007, the United States declined to intervene (Dkt. No. 19), and the complaint, which had been amended once, on May 30, 2006 (Dkt. No. 6), was unsealed. Relator filed a second amended complaint on February 7, 2008. Dkt. No. 23. Defendants moved to dismiss this complaint on a variety of grounds. Dkt. Nos. 28, 29. Relator responded (Dkt. No. 35) and Defendants replied (Dkt. Nos. 38, 39).

Relator, a former employee of Spohn, where he was the director of property management

1

(Dkt. No. 23 ¶ 8), alleges a Medicare fraud scheme by Defendants, who operate three "hospital campuses" in Corpus Christi, Texas. *Id.* ¶ 3. The core claim of Relator's complaint is that Defendants entered into below-market leases with doctors and physician groups who would, in return, refer more patients to Defendants' facilities. *Id.* ¶ 9. Relator alleges that Defendants' behavior violates the Stark law, 42 U.S.C. § 1395nn, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), and "various similar state laws" as well as "ethical canons of the medical profession."[1] Dkt. No. 23 ¶ 9. Relator argues that Defendants' violation of these statutes subjects them to liability under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, because Medicare claims made for patients referred to Defendants' facilities by doctors with below-market leases are fraudulent.[2] Specifically, Relator claims that Defendants violated 31 U.S.C. § 3729(a)(1),[3] (2),[4] (3),[5] and (7).[6] Relator also claims that Defendants fired him in retaliation for filing this lawsuit, in violation of 31 U.S.C. § 3730(h). Finally, Relator appears to include some miscellaneous claims involving misuse of

---

[1] The actual substance of these statutes is irrelevant to the decision of these motions: the Court need only focus on the False Claims Act and the requirements to state a claim thereunder.

[2] Relator relies on *United States ex rel. Thompson v. Columbia/HCA Healthcare*, 20 F. Supp. 2d 1017 (S.D. Tex. 1998). The court in *Thompson* permitted the relator to go forward with his action on precisely the same theory as that presented by Relator here (namely, False Claims Act violations predicated on violations of the Stark and Anti-Kickback laws).

[3] "Any person who knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval . . . is liable to the United States Government for a civil penalty . . . ."

[4] "Any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government . . . is liable to the United States Government for a civil penalty . . . ."

[5] "Any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid . . . is liable to the United States Government for a civil penalty . . . ."

[6] "Any person who knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . is liable to the United States Government for a civil penalty . . . ."

donated funds and "disproportionate share" funds.  *See* Dkt. No. 23 ¶¶ 35, 45.[7]

## II. Subject Matter Jurisdiction

The Court must first determine whether it is barred by 31 U.S.C. § 3730(e)(4)(A) from taking jurisdiction over this suit.  Defendants argue that Relator's allegations against Defendants have been made before, in state litigations involving Ross Physical Therapy and Rehabilitation.[8]  This is significant because the qui tam provision of the False Claims Act includes the following jurisdictional bar:

> No court shall have jurisdiction over an action under this section based upon public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . unless . . . the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A).  The key document here is Ross's First Amended Counterclaim and Petition for Declaratory Judgment filed in one of the state suits.  Dkt. No. 29 Ex. B.  Ross claimed that her office space, from which she was ousted by Spohn, had been released to a different tenant paying less than Ross was paying before she was removed from the space by Spohn. *Id.* ¶ 8.4.  Ross then claimed that this violated "Title 42 Chapter 7 of the United States Code Annotated (e)" (by which the Court presumes Ross meant 42 U.S.C. § 1395nn(e)(1)(A)(iv), *i.e.* the Stark law).[9]

---

[7] The actual content of these claims is unimportant.  Relator concedes that they were inadequately pled, so they will be dismissed, as discussed *infra*, Part III.B.4.

[8] *See Ross Physical Therapy & Rehab. v. Spohn Inv. Corp.*, Cause No. 04-62596-2 (Nueces County Court 2004); *CHRISTUS Spohn Health System Corp., et al. v. Ross Physical Therapy & Rehab., et al.*, Cause No. 04-7289-F (Tex. 214th Judicial District Court).

[9] Paragraph 8.4 is not long:

> At the time that the Spohn P.T. [*i.e.* Ross] office space was leased to the Corpus Christ [sic] Women's Clinic, it was paying more in lease payments to Christus Spohn than the new lease given to the Corpus Christi Women's Clinic.  This is a violation of Title 42 Chapter 7 of the United States Code Annotated (e) which states in part: . . . .

3

Defendants argue that the Ross litigation represents, within the meaning of 31 U.S.C. § 3730(e)(4)(A), "public disclosure" of the allegations made here, that Relator's suit is "based upon" those allegations, and that Relator is not an "original source" of the information relied upon.

### B. Legal Standard

The qui tam provision of the False Claims Act, limited by the jurisdictional bar, seeks to balance two competing goals: on the one hand, to enlist private citizens in ferreting out fraud against the government, and on the other, to prevent parasitic actions by those citizens, rushing to the courthouse to sue after reading about fraud in the newspaper, and thus taking a share of the United States' recovery. *See, e.g.*, *United States ex rel. Reagan v. E. Tex. Med. Ctr.*, 384 F.3d 168, 174 (5th Cir. 2004).

Deciding whether the jurisdictional bar applies is a three-step inquiry. First, was there a "public disclosure"? Second, are Relator's claims "based upon" that public disclosure? Third, is Relator an "original source of the information"? *See Fed. Recovery Servs. v. United States*, 72 F.3d 447, 450 (5th Cir. 1995) (citing *Cooper v. Blue Cross & Blue Shield*, 19 F.3d 562, 565 n.4 (11th Cir. 1994)). Relator does not contest Defendants' argument that there was a public disclosure.

Whether Relator's suit is "based upon public disclosure of allegations or transactions" in the Ross litigation is not a straightforward question. While the statutory language seems to imply that "based upon" applies to "public disclosure," not to "information" or "allegations or transactions," most courts to address this problem, including the Fifth Circuit, have performed their analysis by asking whether the qui tam suits were "'based upon' the publicly disclosed allegations." *Reagan*, 384 F.3d at 176; *see also United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 442 (5th

---

42 U.S.C. § 1395nn(e)(1)(A)(iv) is then quoted. The paragraph closes with a quotation of the definition of "fair market value" from 42 U.S.C. § 1395nn(h)(3).

Cir. 2008) ("[W]e hold that [relator's] qui tam suit is based on publicly disclosed information.").

The distinction can be important for determining the meaning of "based upon." The Courts of Appeals are split on the definition of "based upon." Most say that satisfaction of the "based upon" requirement is met by suits that are *supported by* the previously disclosed *information*. The Fourth Circuit, however, appearing to be the lone holdout, has held that "based upon" requires a higher bar. Calling it "the only fair construction of the statutory phrase," the Fourth Circuit held that the later suit must actually be *derived from* the earlier *public disclosure*. *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994). To illustrate the distinction, a relator who repeats the exact allegations made in a prior civil complaint without awareness of that complaint likely would not be said to have based his allegations on the *public disclosure*, and thus would not have *derived* his complaint from the earlier disclosure. On the other hand, that second complaint could be said to be *supported by* the publicly disclosed *information* irrespective of the relator's knowledge of the earlier complaint.

The Fifth Circuit has only been faced with the need to analyze whether a relator's complaint was "based upon" earlier public disclosures three times. *See Fed. Recovery Servs.*, 72 F.3d at 450-51; *Reagan*, 384 F.3d at 176; *Fried*, 527 F.3d at 442. *Fried* was a relatively easy case: there, "the very essence" of relator's allegations had been disclosed in government hearings and a General Accounting Office report. *Fried*, 527 F.3d at 442. If ever there was a case where one could be sure that the government was already aware of the alleged fraud, *Fried* was it.

The facts of *Reagan* also required little in-depth analysis: the relator's federal complaint largely repeated the allegations made in *her own* earlier state court case. *Reagan*, 384 F.3d at 176. Moreover, the relator had previously brought her allegations to the attention of a federal agency, the

5

Health Care Financing Administration. *Id.* at 172. Thus the government clearly had knowledge of the fraud, and relator's suit could be found to have been "based upon" her own earlier suit whether a high ("derived from") or low ("supported by") bar was used. Nor did the court specify which standard it was applying.

Finally, the issue in *Federal Recovery Services* was whether it was enough that relator's complaint was only *partially* based on earlier disclosures. The relator there conceded that its complaint was based upon an earlier civil suit, but argued that because it added additional allegations, it could avoid the application of the jurisdictional bar. *Fed. Recovery Servs.*, 72 F.3d at 451. The Fifth Circuit rejected this argument, holding that even if the earlier disclosures formed only a partial basis for the new suit, that was enough to have the jurisdictional bar applied. *Id.*

In short, the Fifth Circuit has never had to explicitly decide whether the Fourth Circuit's "derived from" standard or the more common "supported by" standard should apply.

Nor has the Southern District had many opportunities to weigh in. Outside of the district court opinion in *Reagan*,[10] only three cases (and only two published cases) address whether a relator's suit is "based upon" earlier disclosures. In one of those cases, *United States ex rel. Farmer v. City of Houston*, Civ. No. H-03-3713, 2005 WL 1155111 (S.D. Tex. May 5, 2005), the relator did not contest the "based upon" issue.

The relator in *United States ex rel. Ward v. Commercial Metals Co.*, Civ. No. C-05-56, 2007 WL 1390612 (S.D. Tex. May 9, 2007), did contest the issue, but the court was faced with another easy set of facts: the relator "quot[ed] extensively" from the public disclosure and admitted in a deposition that the public disclosures were "the source that I learned those facts from." Under any

---

[10] *See United States ex rel. Reagan v. East Texas Medical Center Regional Healthcare System*, 274 F. Supp. 2d 824 (S.D. Tex. 2003).

6

definition of "based upon," then, relator would be caught by the jurisdictional bar.

Only in *Wercinski v. IBM*, 982 F. Supp. 449 (S.D. Tex. 1997), was the court faced with a real choice between "based upon" standards. The court opted for the majority position, the "supported by" standard. The district judge reasoned that the Fourth Circuit's decision improperly balanced the competing considerations of discovering fraud and preventing parasitic suits:

> [w]hen . . . the government has been alerted to potential wrongdoing and in possession [sic] of all the information it needs to begin an investigation, qui tam actions brought by relators whose only contribution is to reinforce what the government already knows are unnecessary, resulting only in a reduction the [sic] Government's potential recovery. The [Fourth Circuit's] definition would tolerate such suits in clear contradiction to Congress' intent to not share its recovery with a relator whose efforts are merely duplicative.

*Id.* at 460 (citations omitted). The difficulty with this argument is that it does not really aid the court in determining where exactly Congress drew the line between the twin aims of avoiding parasitic suits and uncovering fraud. It is certainly true that the "supported by" standard would allow fewer private suits, many of them duplicative. If this were the sole consideration, then the "supported by" standard would certainly be the correct one. However, the "supported by" standard, while advancing the aim of avoiding parasitic suits, might detract from the ability of the government to uncover fraud because fewer private suits would be brought. The "derived from" standard, by contrast, would likely advance the aim of uncovering fraud while adding to the number of parasitic suits. In short, a court deciding which standard to use must consider *both* aims of the statute in attempting to divine where Congress intended to draw the line. The flaw of the argument in *Wercinski* is that it considers only one side of the coin: the prevention of parasitic suits.

The court in *Wercinski* also argued that the Fourth Circuit's standard made the "original source" requirement superfluous. *Wercinski*, 982 F. Supp. at 460 (quoting *United States ex rel.*

*Rabushka v. Crane*, 40 F.3d 1509, 1528 (8th Cir. 1994) (Magill, J., dissenting)). This argument is a more powerful one. If a relator files a complaint based on his direct and independent knowledge (and is thus an "original source"), then that relator would have "derived" his complaint from that knowledge, not from an earlier disclosure. Thus, any relator who derives his complaint from public disclosures will also fail to satisfy the original-source exception, and the original source exception will have been, in essence, written out of the statute. The "supported by" reading of "based upon," by contrast, does not suffer from this problem. In the absence of clear guidance on this point by the Fifth Circuit, then, the Court follows the majority's "supported by" rule so as to give effect to the entire text of the statute.

### C. Application

Is Relator's complaint "supported by" the prior public disclosure, the Ross litigation? Ross seemed to allege an example of the *predicate* violation that Relator complains of here when she argued that Defendants gave a new tenant a lease at a lower rate and quoted the Stark law. The question is whether this is enough to activate the jurisdictional bar and prevent the Court from taking jurisdiction over Relator's suit.

In the influential case of *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994), the D.C. Circuit pointed out that the relevant public disclosure was not merely of information, but of transactions or allegations. The court used an algebraic illustration: in the expression "$X + Y = Z$," Z is an allegation of fraud, and X and Y are the elements of fraud. *Id.* at 653-54. The jurisdictional bar only applies if the public disclosure was of an *allegation* (Z) or of an entire transaction (X *and* Y). *Id.* at 654.

In this case, there was clearly no allegation of fraud, no "Z": the Ross papers do not mention

8

the False Claims Act, they do not mention Medicare, and the relevant sections make no mention of fraud at all. The allegation was a violation of the Stark law, which, again, is only the *predicate* violation on which Relator's False Claims Act violation is premised. And even that allegation was only sketchily made: the actual allegation is that Spohn gave a better deal to the new tenants. That Ross then quoted the Stark law does not convert that statement into an actual allegation of fraud. Further, there is no "X + Y" in the Ross papers: the claim here is Medicare fraud on the government, but Ross makes no mention of *any* element of that kind of violation.

Defendants argue that the lack of reference to the False Claims Act in the Ross litigation does not save Relator from the jurisdictional bar, citing *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568 (10th Cir. 1995), *United States ex rel. Lissack v. Sakura Global Capital Markets*, No. 95 Civ. 1363, 2003 WL 21998968 (S.D.N.Y. Aug. 21, 2003), *Ward*, 2007 WL 1390612, and *United States ex rel. Johnson v. Shell Oil*, 33 F. Supp. 2d 528 (E.D. Tex. 1999). Neither these cases nor any other the Court has found supports Defendants' argument.

In *Fine*, while the Tenth Circuit did reject relator's argument that a failure to mention the False Claims Act saved him from the jurisdictional bar, it noted that "public disclosure of *the material elements* of the fraudulent transaction bars *qui tam* actions . . . ." *Fine*, 70 F.3d at 572 (emphasis added). It can hardly be said that the relevant paragraph of the Ross papers disclosed the material elements of the fraudulent transaction, since no mention was made of claims on the government, false or otherwise, or even of actual below-market leases, notwithstanding the quotation from the Stark law.

From *Lissack*, Defendants rely on the following quote: "The mere fact that the Relator alleges a different theory regarding how the Government is harmed by the fraud that has been

9

publicly disclosed does not mean that the 'allegations or transactions' were not disclosed." *Lissack*, 2003 WL 21998968, at *11. The relator in *Lissack* presented the same argument that Relator here does, but the *Lissack* court's answer does not really address the question: it is not an issue of a *different* theory of harm, but an issue of having a theory of harm to the government in the first place. That is, it appears that in *Lissack*, as here, the prior public disclosures did not address fraud *on the government*, but only made some private claim. Yet the court there wrote as if the prior disclosures simply contained a different theory of harm than the later lawsuit. In short, this Court does not find the analysis in *Lissack* convincing.

*Ward* was a much more straightforward case than this one. The relator there argued that because the public disclosure did not contain an allegation of a False Claims Act violation, the jurisdictional bar should not apply, and the Court rejected that argument. However, the rejection came on the basis of the fact that even though the precise *allegation* was not made, exactly the same *transaction* was alleged in the public disclosure. In fact, the public disclosure in *Ward* actually mentioned that the United States was the party that would be injured, in sharp contrast to the purely private concerns of the Ross litigation here. The Ross litigation cannot be said to have discussed the transactions alleged to be unlawful by Relator here.

Finally, in *Johnson*, the relators argued that one particular element (a false filing of a form) was not alleged by the public disclosure. Here, by contrast, *no* element was alleged: the Ross papers do not mention claims on the government, false statements, or any other hallmarks of a False Claims Act case. Even the scheme (the below-market leases) was only obliquely mentioned, as discussed above.

In short, there is no support for Defendants' argument that the Ross litigation provides the

basis for Relator's suit. Moreover, one should not lose sight of the forest for the trees. The point of the public disclosure bar is to prevent parasitic lawsuits by relators racing to the courthouse to try to take a piece of the government's recovery before the government has a chance to get there. A realistic look at the Ross litigation filings shows little indication of this possibility. It is a difficult claim indeed to argue that one paragraph in a purely private litigation with an obscure reference to the Stark law, with little factual ground to back up that Stark reference, actually put the government on notice of the scheme alleged by Relator.

Thus, whatever may have been publicly disclosed in the Ross litigation, Relator here did not base his suit upon it. The jurisdictional bar, then, does not apply, and there is no need to address whether Relator qualifies under the "original source" exception.

### III. Failure to State a Claim

Having determined that this Court has jurisdiction over Relator's claims, the next contention by Defendants is that Relator failed to state a claim upon which relief could be granted under the False Claims Act.

### A. Legal Standard

Rule 12(b)(6) provides that a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion, a court must accept the plaintiff's allegations as true and draw all reasonable inferences in his favor. *See, e.g.*, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). A court may not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts. *See St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).

Dismissal can be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). While a complaint need not contain detailed factual allegations, the Supreme Court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65, 1969 (2007) (abrogating the *Conley v. Gibson*, 355 U.S. 41 (1957), 'no set of facts' standard as "an incomplete, negative gloss on an accepted pleading standard") (citations omitted). Plausibility, as contrasted with speculation, is the touchstone: plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Id.* at 1974; *Nationwide Bi-Weekly Admin. v. Belo Corp.*, 512 F.3d 137, 140 (5th Cir. 2007).

Because False Claims Act actions are fraud cases, the special pleading rules of Rule 9(b) apply. *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999); *Thompson*, 125 F.3d at 903. That rule reads: "In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The "circumstances" that must be pled with particularity are the "time, place and contents of the alleged misrepresentation, as well as the identity of the person making them." *Keith v. Stoelting, Inc.*, 915 F.2d 996, 1000 (5th Cir. 1990) (quoting 5A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297). These have been referred to as the "who, what, when, and where" of the fraud. *See Thompson*, 125 F.3d at 903 (quoting *Williams v. WMX Tech.*, 112 F.3d 175, 179 (5th Cir. 1997)). In addition, the Fifth Circuit requires a fifth element: this element has been identified

12

variously as the "how," the "why," or the "what the person obtained thereby" element. *See United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F. Supp. 2d 601, 614-15 (S.D. Tex. 2001). Judge Rosenthal recognized in *Wilkins* that all three of these requirements reflect the same basic rule: "in cases in which the mechanism or basis of the fraud is not otherwise apparent from the face of the complaint, the plaintiff must explain how the fraud worked." *Id.* at 616.

### B. Analysis

#### 1. Claim for payment

The first element of a False Claims Act cause of action is that defendant actually submitted a claim for payment to the government. The existence of a claim is one of the "circumstances" of a fraud, and thus must be pled with particularity under Rule 9(b). *Russell*, 193 F.3d at 308. Relator obviously need not plead every single claim for payment made by Defendants over the years that he claims this fraud was taking place. However, Relator cannot survive a motion to dismiss with mere generalities.

Relator's complaint is devoid of anything but general allegations that "illegal claims" were submitted for payment under Medicare. *See* Dkt. No. 23 ¶¶ 11-12. The level of specificity required to survive a motion to dismiss is illustrated well in *Farmer*, 2005 WL 115111, where the court noted that "Relator . . . point[ed] to an RFP [Request for Payment] from [defendant] to the City, that is dated and signed by representatives of [defendant] and the City . . . ." *Id.* at *2. Relator here has accomplished no such specificity in his allegations.

While Relator may not have access to Defendants' records so as to be able to examine the paperwork associated with Medicare claims, he must at least allege a factual basis for averring, on information and belief, that false claims were submitted. *Thompson*, 125 F.3d at 903. Relator does

13

not even meet this lower bar. Relator points, with little explanation, to a variety of exhibits attached to his complaint that supposedly form his basis for belief that Medicare patients were illegally referred (and thus his basis for belief that Medicare claims were made by Defendants). *See* Dkt. No. 23 Exs. D, R-1 to R-5, H-1, H-2, K, T. It is unclear what point Relator is trying to make with these exhibits. They mostly relate to Defendants' alleged practices of giving below-market leases to some doctors. Thus, while Relator has perhaps alleged with particularity that the Stark and Anti-Kickback statutes were violated, this does not repair the key problem: Relator has not alleged a violation of the *False Claims Act* with particularity. This alone would require dismissal of Relator's complaint.

### 2. False Certification

Failure to allege a claim made on the government is not Relator's only problem, however, as his attempt to assert false certification also fails.

"False certification" is one theory on which False Claims Act liability can be predicated. The core concept is that while the claim made on the government may not itself be false, the claimant made some certification, often of compliance with laws and regulations, that was false. When submission of this certification is a prerequisite to payment of a claim, falsification of the certification is sufficient grounds for False Claims Act liability. *See United States ex rel. Graves v. ITT Educ. Servs.*, 284 F. Supp. 2d 487, 496-99 (S.D. Tex. 2003) (explaining false certification theory).

The paragraphs in Relator's complaint in which he mentions certification are highly general, falling short of the Rule 9(b) particularity standard. Relator's complaint only states generally that "Spohn . . . falsified certifications that the Medicare services identified in the annual hospital costs reports complied with the laws and regulations dealing with the provision of healthcare

14

services . . . ." Dkt. No. 23 ¶ 11. This type of statement is far too general to pass Rule 9(b) muster. Relator fails to identify, for instance, when Defendants falsified certifications and what the contents of those certifications were.

Moreover, Relator fails to allege with sufficient particularity that the certifications were prerequisites for payment under Medicare. Relator baldly states that this is so *(Id.* ¶ 12), but gives no grounds for support of this statement. Rule 9(b) requires more.

Thus, Relator's failure to allege with sufficient particularity his false certification theory of recovery is another gap in his complaint requiring dismissal.

### 3. Retaliation

Defendants argue that Relator failed to state a claim for retaliation under 31 U.S.C. § 3730(h). This claim is mentioned just once in Relator's complaint. Dkt. No. 23 ¶ 44. It is not actually listed as a cause of action in the Causes of Action section of the complaint. All the Federal Rules of Civil Procedure require, however, is "a short and plain statement of the claim showing that the pleader is entitled to relief" and "a demand for the relief sought," FED. R. CIV. P. 8(a)(2), (3), both of which are contained in paragraph 44. This Court will consider the claim to have been made, then, and analyze whether it was adequately pled.

31 U.S.C. § 3730(h) states, in relevant part:

> Any employee who is discharged . . . by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section . . . shall be entitled to all relief necessary to make the employee whole.

Relator, then, must allege that he engaged in protected activity, that Defendant knew about the protected activity, and that Defendant fired him because of the protected activity. *See Bouknight v. Houston Indep. Sch. Dist.*, Civ. No. H-06-1057, 2008 WL 110427, at *4 (S.D. Tex. Jan. 8, 2008).

The first point of contention between the parties, although they raise the issue only in footnotes, is whether the statute of limitations had expired on Relator's retaliation claim by the time he amended his complaint to add it. The applicable statute of limitations for section 3730(h) is not the six-year period provided in 31 U.S.C. § 3731(b), but rather the period provided by the most closely analogous state statute of limitations. *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 420 (2005). Defendants argue that the applicable statute of limitations is found in Texas Health and Safety Code § 161.134, which prohibits retaliation against hospital employees for reporting any violations of law. That law provides only 180 days to sue. TEX. HEALTH & SAFETY CODE § 161.134(h). Relator argues, by contrast, that Texas Civil Practice and Remedies Code § 16.003, which provides a two-year limitations period for a variety of causes of action, applies. This appears to be an issue of first impression in this Circuit, but it is far from difficult to resolve: Relator's statute applies to "trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and forcible detainer," while Defendants' statute, as pointed out, applies to retaliation for whistleblowing against hospital employees. Clearly, Defendants' statute is more closely analogous than Relator's. Thus, the 180-day limitations period will apply here.[11]

Relator first raised the issue of retaliation in his First Amended Complaint. Dkt. No. 6 ¶ 25. In that paragraph, he alleged that he was terminated on September 19, 2005. The amended complaint was filed on May 30, 2006, well more than 180 days after the alleged termination. This

---

[11] This Court does not decide what statute of limitations would apply in cases outside the health care industry, where perhaps there is no specific whistleblower statute. The Court merely holds that in this alleged whistleblower retaliation case, Texas's health-care whistleblower retaliation statute is the relevant one for statute of limitations purposes.

16

claim, then, must be dismissed with prejudice.[12]

### 4. Relator's concessions

CHRISTUS Health argues that Relator has failed to plead a cause of action against it and that it cannot be held vicariously liable for Spohn's allegedly wrongful acts, since CHRISTUS Health does not, in fact, own or control Spohn, as Relator alleged in his complaint. Dkt. No. 23 ¶ 3. Relator admits that his pleadings are inadequate as may regard CHRISTUS Health's role in the alleged fraud. In addition to the reasons for dismissal discussed above, the claims against CHRISTUS Health should be dismissed on this ground as well.

Defendants also argue that Relator did not adequately plead the elements of conspiracy under the False Claims Act. Relator also concedes this argument. Thus, Relator's claim of conspiracy in violation of 31 U.S.C. § 3729(a)(3) is dismissed.

Finally, as with his retaliation claim, Relator included in his complaint references to other claims that he did not enumerate in his Causes of Action section. In paragraph 35 of his complaint, Relator argues that Spohn "used donated funds" to remodel offices "as an illegal inducement to obtain illegal referrals . . . ." Dkt. No. 23 ¶ 35. In paragraph 45, Relator claims that "Spohn is receiving money from the government as disproportionate share hospital funds . . . as reimbursement for claimed indigent care rendered by Spohn Memorial . . . and then giving the bulk of that . . . money to other Spohn facilities . . . ." *Id.* ¶ 45. This is alleged to be a "further violation" of the False Claims Act. *Id.* Defendants argue that neither of these claims has been adequately pled,

---

[12] Relator fails to raise the issue of whether his amended complaint should relate back to the date of his original complaint. In any case, the law of relation back, *see* FED. R. CIV. P. 15(c), is inapplicable here because Relator's retaliation claim is a new wrong, distinct from the fraud alleged in the rest of the complaint. Furthermore, it would make little sense in this case for the claim to relate back to the original complaint because Relator had not even been fired as of the day he filed that complaint.

and Relator agrees. These claims, then, are also dismissed.

## IV. Repleading

Rule 15(a)(2) states that "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Relator has not come into court with multiple insufficient complaints or shown bad faith, undue delay, or given any other reason for this court to deny the liberally granted permission to amend. The Court will allow Relator twenty (20) days to file an amended complaint to address the deficiencies identified in this order.

## V. Conclusion

For the foregoing reasons, the Court finds that Defendants' Motions to Dismiss should be GRANTED.

It is so ORDERED.

Signed this 22nd day of January, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE