IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| EX REL. DANNY LYNN SMART, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. C-05-287 |
| | § | |
| CHRISTUS HEALTH, AKA CHRISTUS | § | |
| HEALTH SYSTEM, and CHRISTUS | § | |
| SPOHN HEALTH SYSTEM | § | |
| CORPORATION, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendants CHRISTUS Health System ("CHRISTUS Health") and CHRISTUS Spohn Health System's ("Spohn") (collectively, "Defendants") Motion for Protective Order. Dkt. No. 42. Having considered the motion, responses, record, and relevant law, the Court finds that Defendants' motion should be GRANTED in part and DENIED in part as set forth below.

### Background

Relator Danny Lynn Smart, a former employee of Spohn, filed this qui tam action against Defendants. Attached to his third amended complaint (Dkt. No. 41) was, *inter alia*, Exhibit CC, a printout of a variety of email conversations, including some involving counsel for Defendants. Defendants have claimed that Relator has violated their attorney-client privilege by not returning these documents to Defendants and by attaching them to his complaint. The Court ordered Exhibit CC sealed pending a ruling on the instant motion. After a conference with the parties, the Court

1

further ordered Relator to file copies of all documents relevant to the case in his possession with the Court for in camera review. Relator has done so, and has provided a list of such documents to Defendants. Both parties have also filed briefs with the Court. Defendants' brief argues that, in addition to Exhibit CC, a number of other exhibits attached to Relator's complaint, as well as a variety of documents in Relator's possession, are privileged.

## Applicable law

The attorney-client privilege prevents disclosure of confidential communications between an attorney and client made for the purpose of seeking or rendering legal services. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir.1982). Its purpose is to encourage full and frank communication between attorneys and their clients, thereby promoting broader public interests in the observance of law and administration of justice. *Upjohn*, 449 U.S. at 389. The privilege applies equally when the client is a corporation. *Id.* at 390. The party asserting the attorney-client privilege must prove that the confidentiality of the communications has been preserved; otherwise, the client "forfeits" his claim to the privilege. *El Paso*, 682 F.2d at 539. "The burden of establishing privilege rests on the party who invokes it." *United States v. Rodriguez*, 948 F.2d 914, 916 (5th Cir. 1991) (citing *Hodges, Grant & Kaufmann v. Commissioner*, 768 F.2d 719, 721 (5th Cir. 1985)). "[T]he attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents. The privilege must be specifically asserted with respect to particular documents." *El Paso*, 682 F.2d at 539 (citations omitted) (citing *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981); *United States v. Roundtree*, 420 F.2d 845, 852 (5th Cir. 1969)). Disclosure of attorney-client communications to a third party who lacks a common legal interest generally waives the attorney-client privilege. *In re Auclair*, 961 F.2d

65, 69 (5th Cir.1992).

One key exception to the attorney-client privilege is where the attorney's advice is sought to further a crime or fraud. "Pursuant to the crime-fraud exception, privilege is overcome when an attorney-client communication or work product is intended to further continuing or future criminal or fraudulent activity. The party seeking discovery of privileged information bears the burden of establishing a prima facie case that the attorney-client relationship was intended to further criminal or fraudulent activity." *In re: E.E.O.C.*, 207 Fed. Appx. 426, 434 (5th Cir. 2006) (citations omitted) (citing *In re: Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005)).

## Discussion

In Defendants' brief on the privilege issue, they identify a variety of documents, some attached to Relator's Third Amended Complaint and some in the set of documents submitted for in camera review, that they believe are covered by the attorney-client privilege. The Court will first discuss the four attachments to Relator's Third Amended Complaint that Defendants claim are privileged, followed by the fifteen relevant documents of the many submitted for in camera inspection.

**A. Exhibits**

*Exhibit CC*

This exhibit contains a variety of emails sent to and from Scott Weber, who is identified in the signature block of the emails as the Regional General Counsel for CHRISTUS Health. There are three further emails in the exhibit: one message from Lisa Ewing to Relator (Ewing is identified as the Coordinator, Property Management); one message from Susan Hughes to Relator (Hughes is identified as a Senior Paralegal at CHRISTUS Health); and an email exchange between Mike T.

Johnson and Relator (Johnson is identified as an Administrator for CHRISTUS Spohn Hospital South).

The exhibit is confusingly organized, so the Court cannot be entirely sure where email conversations begin and end. However, it appears to contain eight emails sent by Scott Weber, with one duplicate. Three of the eight emails are explicitly labeled "Confidential and Privileged Attorney/Client Communication." They all discuss legal matters. Thus, Defendants have established that the Weber emails in Exhibit CC are privileged attorney-client communications.

The non-Weber emails, however, do not appear to involve any attorneys or any discussion of legal matters. In particular, the Susan Hughes email, while sent by a paralegal, merely contains a question to Relator about whether Relator wants the legal department to prepare a letter to a doctor regarding her lease. The email does not on its face reveal communications from Defendants to their counsel about legal matters, and Defendants do not explain in their briefs to the Court why this particular email is privileged. Thus, the non-Weber emails in Exhibit CC are not privileged.

*Exhibit J-2*

The first two pages of this exhibit are labeled "Second Amendment to Spohn Hospital South Medical Office Building Lease." This document is signed by both a representative of the landlord and the tenant. The next four pages are a letter from Ernest L. Duncan, Jr. The affidavit of Ben Donnell identifies Duncan as a former counsel to the firm Meredith, Donnell & Abernethy, P.C., which firm represents CHRISTUS Spohn in this matter and others. The letter contains legal advice pertaining to particular provisions of the lease and to reasons for not including other types of provisions in the lease. The letter, then, is clearly privileged.

There does not appear to be any reason, however, for the lease itself to be covered by the

privilege. Even if it had been privileged at one point, the fact that it was signed by a third party means that it was divulged and thus confidentiality was broken.

*Exhibit L-36*

This exhibit is a one-page letter from Ernest Duncan to Lisa Ewing. The letter is merely a cover letter for a revised lease form, and does not on its face contain any legal advice. Defendants' briefs and affidavits do not set out in any detail why this letter should be covered by the privilege. A document is not covered by the privilege merely because it is written by a lawyer.

*Exhibit M-5*

The first page of this exhibit is a memorandum from Ernest Duncan to Jane Bakos and Dan Griffis. Bakos is an administrator at Spohn Hospital South. Griffis's position is unidentified. The last three pages are a proposed lease for use with a particular doctor in a suite in Spohn South Health Plaza. The substance of the memorandum is a suggestion of how much to charge in the lease and what type of lease-extension option to include. Advice on how to draw up a lease, including price terms, is a legal service, and thus the memorandum is privileged. The attached lease is also privileged. In contrast to Exhibit J-2, the lease is unsigned, and thus there is no indication on the face of the document that is has been divulged.

**B. Documents submitted for in camera inspection**

The following documents will be identified by the Bates numbers used by Relator's attorney, shortened to the relevant digits for convenience.

*Document '0012-'0015*

This is a letter and "Partial Waiver of Contractual and Statutory Landlord's Liens" sent by Ernest Duncan to Relator. The letter contains an explanation of the terms of the attached document,

and thus is privileged legal advice, along with the document itself, which is privileged for the same reason that the lease in Exhibit M-5 is privileged.

*Document '0068*

This document is an email from Scott Weber. It is the same email as the first page of Exhibit CC, discussed *supra*.

*Document '0233*

This letter from Ernest Duncan is Exhibit L-36, discussed *supra*.

*Document '0256-'0262*

This is a letter from Wilson Calhoun to Tom Neff, V.P. of Planning & Business Development, on Meredith, Donnell & Abernethy letterhead. The letter discusses the tax implications, from Defendants' perspective, of rent-abatement agreements with various physicians. The letter states that the advice is being provided in response to a request from Relator. It is thus clearly privileged.

*Document '0263-'0272*

This document contains a variety of emails sent to and from Scott Weber. The first, second, third, and fifth pages of this document are included in Exhibit CC, discussed *supra*. The sixth page is a repeat of the second page. The seventh, eighth, and ninth pages are also included in Exhibit CC.

The fourth and tenth pages show an email discussion between Weber, Robert E. Butler, Tijuana Mitchison, and Relator. The emails appear to reflect an attempt by Weber to meet with Butler to discuss leases, but do not appear to contain any actual legal advice. Defendants have not explained why these emails in particular should be covered by the privilege. Thus, the fourth and tenth pages of this document are not privileged.

*Document '0387-'0388*

This is an email discussion between Relator and Sandra Northcutt. It clearly does not contain legal advice, as it is merely a request that Relator send a copy of a particular contract to Northcutt. However, Defendants have included an affidavit from Northcutt in which she states that she works in the Risk Department, directly for Dr. Nancy Poblenz, legal counsel. She states that the emails in this document were prepared in anticipation of litigation, as Northcutt was investigating a slip-and-fall in a doctor's office. Thus, Defendants claim that this document is covered by the work product privilege. The document itself supports Northcutt's claim in her affidavit that it was prepared in anticipation of litigation, and Relator has not argued otherwise. Nor has Relator attempted to show that he needs this document and cannot obtain the information any other way. Thus, this document is covered by the work product privilege and the privilege has not been overcome by Relator.

*Document '0393-'0399*

This document is another copy of Document '0256-'262, discussed *supra*.

*Document '0547-'0548*

This is an email conversation between Relator and David Frum. Frum's position is not identified in the emails or Defendants' briefing. Thus, the Court has no way of determining whether Frum is an attorney. Defendants have, then, not met their burden of showing that this document is privileged.

*Document '0703*

This document is Exhibit L-36, discussed *supra*.

*Document '1008*

This is an email or letter sent by Susan Hughes. The letter has unidentified handwriting on it. The letter contains a question asked by Hughes, a paralegal, and the handwriting appears to be responsive to the question. Neither the question nor the answer is of an obviously legal nature. Without knowing more about this document, the Court cannot determine that it is privileged.

*Document '1036-'1039*

This is a letter sent to Relator by Ernest Duncan. As in other similar letters, this document explains why Duncan made certain decisions regarding the form of a lease that he had drawn up. Thus, the document is covered by the privilege.

*Document '1066-'1069*

This is another copy of Document '1036-'1039, discussed immediately *supra*.

*Document '1489-'1492, '1501-'1504, and '1513-'1516*

These documents are all copies of Exhibit M-5, discussed *supra*.

**C. *Manayan* Documents**

Defendants point the Court to five documents, Bates numbered '0176, '0273, '0536, '0543, and '0809, that they claim are subject to a confidentiality order in a case (*Manayan v. Christ Spohn Health System Corp.*) in state court. Relator's counsel has apparently already returned all copies of three of these documents to the plaintiff in that case. *See* Dkt. No. 49, Exh. 8. However, there are two documents in the set submitted for in camera review that have apparently not been returned. Relator has not made any argument regarding these documents. It is thus undisputed that they should be returned. All copies of the documents numbered '0536 and '0809 in Relator's possession, then, must be returned to the plaintiff in the *Manayan* case.

**D. Relator's arguments for overcoming the privilege**

Relator has presented two reasons why the privilege should not apply here. First, Relator has submitted an affidavit in which he states that

> one of the Christus Health legal employees told me in 2003 that I could show these emails [in Exhibit CC] and share their contents to Spohn's physician-tenants as I felt was necessary to help negotiate leases with them. I do not recall who this Christus Health person was, but I believe it was likely Scott Weber or, possibly, Mark Easterly. After I received permission to use these emails, I did share the contents of these emails in 2003 with office personnel of at least one of Spohn's physician-tenants and perhaps more. To the best of my memory, that included office personnel of Dr. Pathikonda.

Dkt. No. 48, Exh. 2.

Defendants responded, however, with their own declarations. Scott Weber, Regional General Counsel for CHRISTUS Spohn, states in an affidavit that he never told Relator that he could share the emails or the contents of the emails with anyone, and further states that "[i]t is not the policy of myself or our Legal department so allow Spohn employees to disclose the content of our privileged communications to such third parties." Dkt. No. 49. Mark Easterly, also Regional General Counsel, states the same in his own affidavit. *Id.*

Given these competing affidavits, the Court finds those presented by Defendants to be more credible. Relator's affidavit specifically states that he is not sure who told him he could share the privileged information. Further, there is no explanation of what purpose sharing such information would serve. It defies logic for Defendants' in-house counsel to on the one hand label their emails with language emphasizing the confidentiality of the communications and on the other hand permit that confidentiality to be broken. Thus, Relator has not met his burden of showing that the documents were either never intended to be confidential or were actually disclosed.

Relator's second argument is based on the crime-fraud exception to the attorney-client privilege. Relator claims that the emails in Exhibit CC were written to help circumvent the Stark

Law. Relator's brief states that his complaint and affidavit "make a prima facie showing that whatever legal advice Spohn received during its ongoing defrauding of the Government was used to help Spohn feign compliance with government regulations and help it continue to defraud the Government." Dkt. No. 48.

Relator's affidavit, however, merely states baldly that the attorneys helped Defendants circumvent the law. The example he gives argues that a particular doctor was given a commercially unreasonable reduction in the term of his lease in violation of the law. The affidavit, however, does not particularize how exactly the attorneys were involved in this. Relator's complaint, moreover, understandably focuses on the behavior of Defendants, not their attorneys. Relator's brief does not point out where in the complaint or the attachments in particular the Court is to find the evidence on which to base a prima facie case that Defendants' attorneys furthered a fraud. Thus, Relator has not met his burden of showing that the crime-fraud exception applies.

Neither of Relator's attempts to overcome the privilege, then, are successful. Thus, the documents that were described above as being privileged will be subject to the protective order set out below.

**Protective Order**

Relator is ordered to return all copies of the following documents to Defendants:

1. The Weber emails in Exhibit CC;

2. The four pages of Exhibit J-2 containing a letter from Ernest Duncan;

3. Exhibit M-5;

4. The documents stamped with Bates numbers '0012-'0015, '0068, '0256-'0265, '0267-'0271, '0387-'0388, '0393-'0399, '1036-'1039, '1066-'1069, '1489-'1492, '1501-'1504, and '1513-

10

'1516.

Further, the Weber emails in Exhibit CC, the Duncan letter in Exhibit J-2, and the first page of Exhibit M-5 are stricken. Any reference to or quotation of the protected portions of these exhibits in Relator's complaint is also stricken.

Finally, all copies of the documents with Bates numbers '0536 and '0809 must be returned to the plaintiff in the *Manayan* case.

## Conclusion

For the foregoing reasons, the Court finds that Defendants' Motion for Protective Order should be GRANTED to the extent provided above.

It is so ORDERED.

Signed this 12th day of June, 2009.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE