UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, DANNY LYNN SMART, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 2:05-CV-287 |
| CHRISTUS HEALTH; aka CHRISTUS HEALTH SYSTEM, *et al.*, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Relator Danny Lynn Smart's ("Relator") March 15, 2013 Rule 60 Motion for Relief from Judgment (Dkt. No. 87), to which the United States of America ("the Government") has responded (Dkt. No. 88) and Relator has replied (Dkt. No. 90).

## I. INTRODUCTION

Defendant Christus Spohn Health System Corporation ("CHRISTUS") owns and operates six hospitals in south Texas, including three in Corpus Christi and one each in Alice, Beeville, and Kleburg. On June 7, 2005, Relator filed this lawsuit on behalf of the Government pursuant to the *qui tam* provisions of the False Claims Act (FCA), 31 U.S.C. § 3729, *et seq*. Relator alleged that CHRISTUS rented office space to physicians at rates that were below fair market value in order to induce physicians to refer patients to CHRISTUS' three Corpus Christi hospitals rather than to its competitors, and that this practice violated the Stark Statute, 42 U.S.C. §1395nn; the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b); and the FCA. The case settled in June 2010 and was dismissed by the Court. Under the settlement, CHRISTUS paid $2,100,000.00 to the Government, of which Relator received $630,000.00, or 30%.

On December 10, 2010, Relator filed a motion under Federal Rules of Civil Procedure 59 and 60 asking the Court to modify or vacate its dismissal of this case. Specifically, Relator sought a share of a $4,130,535.00 administrative recovery that the Office of Inspector General-Department of Health and Human Services Division (OIG-HHS) had obtained from CHRISTUS in 2010 that also involved allegations of Stark and Anti-Kickback Statute violations. After the Government consented to reopening this case and agreed to pay Relator an additional $897,000.00, Relator withdrew his motion. On March 22, 2012, the Court entered an order dismissing the case "with prejudice as to Relator Smart." (Dkt. No. 86.)

Meanwhile, on February 29, 2008, relator Cecilia Guardiola filed a separate *qui tam* lawsuit against CHRISTUS and all six hospitals operated by CHRISTUS. *United States ex rel. Guardiola v. Christus Health, et al.*, No. 4:08-cv-667 (S.D. Tex., Hughes, J.). Guardiola, who had previously resigned from her position as the Director of Case Management at one of CHRISTUS' hospitals, alleged CHRISTUS had violated the FCA by knowingly billing services that should have been performed on an outpatient basis as if they were expensive inpatient services, which resulted in increased Medicaid and Medicare reimbursements. The *Guardiola* case was settled in April 2012 and dismissed in May 2012. Under the settlement, CHRISTUS paid $5,100,481.74 to the Government, of which Guardiola received $1,020,096.35, or 20%.

Despite the fact that the above-captioned case was previously dismissed with prejudice as to Relator, Relator now moves to reopen the case once again to allow him to seek a share of the recovery in *Guardiola*. Relator also moves the Court to adjudicate a request for documents he made under the Freedom of Information Act and to order the record in *Guardiola* to be unsealed.

**II. RELATOR'S RULE 60 MOTION**

Relator first moves the Court to reopen his *qui tam* case pursuant to Federal Rule of Civil Procedure 60(b).

**A. Legal Standard**

Rule 60(b)(6) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any [ ] reason that justifies relief." FED. R. CIV. P. 60(b)(6). This Rule has been recognized as a proper basis for relief under the FCA's "alternate remedy" provision, 31 U.S.C. § 3730(c)(5), which allows a relator to share in the Government's recovery in a related *qui tam* action under certain circumstances. *See U.S. ex rel. Adrian v. Regents of Univ. of Cal.*, 337 Fed. App'x 379, 380 (5th Cir. 2009); *United States ex rel. LaCorte v. Wagner*, 185 F.3d 188, 191 (4th Cir. 1999) ("If the relator believes that the Government acted improperly in procuring a settlement [in another *qui tam* action], then he may return to the court which had jurisdiction over the settlement and move to reopen the judgment under FED. R. CIV. P. 60(b)(6).").

The FCA's "alternate remedy" provision provides in relevant part:

> [T]he Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 U.S.C. § 3730(c)(5). In order to recover under this provision, the original relator must prove that his *qui tam* allegations "overlap" with the allegations that led to the recovery he wants to share. *United States ex rel. Bledsoe v. Community Health Sys.*, 342 F.3d 634, 651 (6th Cir. 2003). The original relator must also prove that he is the "original source" of the information in the related proceeding, meaning that he "has direct and independent knowledge of the

3

information" on which the allegations in the related proceeding are based. 31 U.S.C. § 3730(e)(4)(B); *Rockwell Intern Corp. v. United States*, 549 U.S. 457, 463-64. Finally, the original relator must "provide [ ] concrete evidence that he apprised the government" of the violations in the related proceeding, and that he did so before that information became publicly disclosed. *Bledsoe*, 342 F.3d at 646, 651.

### B. Analysis

Relator argues that his *qui tam* action overlaps the entire *Guardiola* "covered conduct" time frame of six years and that the cases involve three of the same hospitals and the same subject matter; therefore, *Guardiola* is "derivative of" this case. Relator speculates that the bribed doctors that he exposed in this case were repaying the bribe of low rent to CHRISTUS "by signing off on the often false or unneeded admissions of the patients to the hospital," which resulted in the improper overbilling for inpatient procedures alleged in *Guardiola*. (Dkt. No. 87 at 16.) Relator further hypothesizes that "when the Government investigated CHRISTUS, the federal investigators likely spoke to CHRISTUS personnel, including the case manager Guardiola, and the federal investigators likely became aware of the facts that eventually became included in the Guardiola complaint." (*Id.* at 9.) According to Relator, because he was the original source of the matters forming the basis of the *Guardiola* action, the *Guardiola* Court lacked jurisdiction over that case, and the judgment in *Guardiola* is void. As such, Relator claims that he is entitled to 30% of the proceeds recovered by the Government in *Guardiola* in addition to reasonable attorneys' fees.

A review of the Guardiola Settlement Agreement shows that the "covered conduct" in *Guardiola* was as follows:

> The Government contends that from November 19, 2003 to November 18, 2009, the Hospitals Submitted claims to the Federal healthcare programs for outpatient

4

> surgical procedures using inpatient DRG codes which resulted in an increased reimbursement. The Government also contends that from November 19, 2003 to November 18, 2009, the Hospitals submitted claims for short-term outpatient visits – visits that should last less than 24 hours and be coded as "patient observation" services- as if those visits required an overnight hospital stay, therefore qualifying the service as an inpatient service for the purposes of increasing reimbursement. The Government contends that this conduct violated both the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA") and the Texas Medicaid Fraud Prevention Act ("MFPA"), Tex. Hum. Res. Code Ann. Sec § 36.001, *et seq.*

(No. 4:08-cv-667, Dkt. No. 45, Ex. 2 at 3 ¶ F.) As set forth in the Smart Settlement Agreement, the "covered conduct" in Relator's *qui tam* action was as follows:

> The United States contends that it has certain civil claims, as specified in Section III.2, below, against Defendant CHRISTUS Spohn for engaging in the following conduct during the period from January 1, 1995 to June 1, 2010: Defendant CHRISTUS Spohn charged certain physicians rent below fair market value at defendant owned medical office buildings in Corpus Christi, Texas. In return, these physicians referred patients to Spohn Shoreline Hospital, Spohn South Hospital, and Spohn Memorial Hospital. As a result, Defendant CHRISTUS Spohn submitted claims to the Medicare and Medicaid Programs for services rendered to these referred patients. These actions violated the False Claims Act, 31 U.S.C. §§ 3729-32, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7(b) and the Physician Self-Referral Law ("Stark Law") Statue, 42 U.S.C. § 1395nn et seq.

(Dkt. No. 88, Ex. 2 at 3 ¶ H.)

The Court finds that Relator has failed to prove that his *qui tam* allegations overlap with the covered conduct in *Guardiola*. *See Bledsoe*, 342 F.3d at 651. *Guardiola* was limited to CHRISTUS' improper billing practices for inpatient admissions and did not mention anything about office leases, doctors' financial relationships with CHRISTUS, the Stark Statute, or the Anti-Kickback Statute. Relator's pleadings and Settlement Agreement, on the other hand, dealt only with allegations that CHRISTUS violated the Stark Statute and the Anti-Kickback Statute by renting office space to doctors at below-market rents in order to induce them to refer patients to its three Corpus Christi hospitals. Relator did not mention CHRISTUS' admissions or billing practices at all, nor did he mention CHRISTUS' hospitals in Alice, Beeville, or Kleburg.

Relator has also failed to prove that he was the "original source" in *Guardiola*. *See Rockwell*, 549 U.S. at 464. Relator does not offer any evidence that he apprised the Government of CHRISTUS' violations related to inpatient admissions and billing before that information was publicly disclosed, nor does he claim to have direct and independent knowledge of these violations. *See Id.* Instead, Relator merely guesses that Government agents may have interviewed Guardiola at some point after he initiated this *qui tam* action and that the interview uncovered the violations later alleged in *Guardiola*.

Because Relator cannot recover for misconduct by CHRISTUS about which he knew nothing and played no role in uncovering, he is not entitled to relief under 31 U.S.C. § 3730(c)(5). Accordingly, Relator's Rule 60(b) motion is **DENIED**.

## III. RELATOR'S MOTION UNDER THE FREEDOM OF INFORMATION ACT

Relator next complains that, before filing the present Rule 60 motion, his attorney corresponded with counsel for the Government in this case and "also made additional Freedom of Information Act requests to OIG-HHS and DOJ." (Dkt. No. 87 at 12 & Ex. B.) Relator states that his initial request under the Freedom of Information Act (FOIA) resulted in the location of 230 pages of responsive records, of which 97 pages were released to Relator with portions redacted. An additional 45 pages of documents originating from the Department of Justice (DOJ) were not produced but were referred to DOJ for its review and direct response to Relator. OIG-HHS refused to produce 88 pages in their entirety, citing FOIA exemptions listed at 5 U.S.C. §§ 552(b)(4), (b)(5), (b)(6), and (b)(7)(C). Relator further states that after learning about the *Guardiola* case, he made another FOIA request. He does not identify to which agency this request was made; however, it appears the request was made to OIG-HHS based on his statements that OIG-HHS "produced some limited amount of Guardiola documents[,] . . .

explained the existence of numerous other documents[,] and [] suggested that the scope of the FOIA request be narrowed which resulted in the production of Exhibit E." (Dkt. No. 87 at 13.)

Relator now moves the Court to order that the 230 documents identified as responsive to his FOIA request that were previously withheld or redacted "be initially produced to the Court in camera insofar as necessary to satisfy any valid claims of privilege or work product, and then be produced for examination and copying by Relator [] with any necessary restrictions in place." (Dkt. No. 87 at 14.)

### A. Legal Standard

The FOIA requires a federal agency to release all records responsive to a properly submitted request, except for those protected from disclosure by one or more of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). If a governmental agency denies an FOIA request, a federal district court has the authority, "on complaint," to enjoin the agency from withholding agency records and to order the production of any agency records upon a showing that: (1) the records are in fact agency records, (2) the records have been withheld, and (3) the withholding is improper. *Id.* § 552(a)(4)(B). "Judicial authority to devise remedies and enjoin agencies can only be invoked under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation." *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

### B. Analysis

The Court finds that it is without jurisdiction to grant Relator the relief he requests under FOIA for a number of reasons. First, Relator has not properly initiated an FOIA claim by filing a complaint in a civil action. Even if the Court were inclined to allow Relator to pursue his FOIA claim in the above-captioned case, the United States is not the proper defendant, and neither

agency about which Relator complains (OIG-HHS and DOJ) is a party to this action. *See Batton v. Evers*, 598 F.3d 169, 173 n.1 (the federal agency, and not the United States, is the proper defendant in an FOIA action); *Jean-Pierre v. Federal Bureau of Prisons*, 880 F. Supp. 2d 95, 100–01 (D.D.C. 2012) (if an improper party defendant is named in an FOIA suit, the court may dismiss the action against that defendant). Finally, Relator does not allege that OIG-HHS and/or DOJ's withholding of records is improper, nor does he explain why he believes the agencies' explanations are legally invalid.

Accordingly, Relator's request that the Court conduct an *in camera* review of documents that he alleges were withheld or redacted in response to his FOIA request is **DENIED**.

## IV. RELATOR'S MOTION TO UNSEAL THE RECORD IN *GUARDIOLA*

Finally, Relator complains that, except for the Complaint and Settlement Agreement, the record in the *Guardiola* case remains under seal and is not obtainable for review. Relator maintains that unsealing of the record in *Guardiola* "would be judicially economical and in the best interest of all parties involved," as it would allow "a more true and accurate evaluation of the facts and circumstances pertinent to [Relator's] rights of recovery." (Dkt. No. 87 at 14.) As such, Relator moves the Court to unseal the record in *Guardiola* so that he may conduct discovery of the documents that remain under seal.

### A. Legal Standard

The FCA requires that a relator's complaint be filed under seal. 31 U.S.C. § 3730(b)(2). However, it does not include any requirement that the record stay under seal for a certain period of time or that it be unsealed at any time. *Id.* § 3730(b)(3). The Fifth Circuit has not addressed the issue of whether a court should unseal documents containing potentially confidential investigative material after a relator's complaint has been unsealed and the government has

intervened in a *qui tam* action. *United States ex rel. Becker v. Tools & Metals, Inc.*, 2008 WL 3850522, *2 (N.D. Tex. Aug. 19, 2008). However, it is undisputed that the district judge presiding over a given *qui tam* action "has the authority to unseal the documents filed before the government intervene[s] in [a] *qui tam* case" and "has wide discretion in how to determine what documents, if any, should remain under seal, and how to make that determination." *Id.* at *3.

### B. Analysis

*Guardiola* was filed in the Houston Division of the Southern District of Texas, and United States District Judge Lynn N. Hughes is the presiding judge in that case. The undersigned judge has no authority to access the record in *Guardiola* or to determine what documents in *Guardiola*, if any, should be unsealed. To the extent Relator seeks to unseal the record in *Guardiola*, he should file a motion to unseal in that case.

Accordingly, Relator's request that the Court unseal the record in *Guardiola* and/or conduct an *in camera* review of any unsealed documents in that case is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, all of the relief requested in Relator's March 15, 2013 Rule 60 Motion for Relief from Judgment (Dkt. No. 87) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 22nd day of May, 2013.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE